UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WELLS FARGO BANK, N.A., a national banking association,<br><br>    Plaintiff,<br><br>  v.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada limited-liability company; THE FOOTHILLS AT WINGFIELD HOMEOWNERS ASSOCIATION, a Nevada non-profit corporation; FULLER JENKINS CLARKSON, P.C., a Nevada professional corporation,<br><br>    Defendants. | Case No. 3:17-cv-00332-LRH-WGC<br><br>ORDER |
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,<br><br>    Counter-Claimant,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., a national banking association; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., its successors and assigns, as Nominee Beneficiary for DHI MORTGAGE COMPANY, a Texas limited partnership; BRIAN MCKAY, an individual; LAWRENCE D. MCKAY, and individual,<br><br>    Counter-Defendants/ Cross-Defendants. | |

There are three motions pending before the court. First, Wells Fargo, N.A. ("Wells Fargo") moved this court for summary judgment (ECF No. 44), and requested the court take judicial notice of exhibits in support of its motion (ECF No. 45). Defendant, Foothills at Wingfield Homeowners Association ("the HOA" or "Foothills") and defendant, SFR Investments Pool 1, LLC ("SFR") filed responses (ECF Nos. 51, 69). Accordingly, Wells Fargo replied (ECF Nos. 64, 74).

Second, SFR filed a cross motion for summary judgment, to which Foothills joined (ECF Nos. 48, 52). Wells Fargo responded (ECF NO. 68). Accordingly, SFR replied (ECF No. 75).

Third, SFR filed a motion to strike all references and arguments made by Wells Fargo in its motion, responses, or reply of the purported violation of the bankruptcy automatic stay, to which Foothills joined (ECF Nos. 61, 67). Accordingly, Wells Fargo responded (ECF No. 70), and SFR replied (ECF No. 73). The court now grants SFR's motion for summary judgment.

**I.    BACKGROUND**

This matter arises from a nonjudicial foreclosure sale on real property located at 4329 Clearwood Drive, Sparks, Nevada 89436 ("the property") conducted under Nevada Revised Statute ("NRS") § 116.3116 *et. seq.* by Foothills. ECF No. 1 ¶ 4; ECF No. 16 at 10. In 2008, Brian McKay and Lawrence D. McKay purchased the property, executing a deed of trust designating DHI Mortgage Company as the lender, with Ticor Title of Nevada as the trustee and Mortgage Electronic Registrations Systems, Inc. ("MERS") as the nominee, in the amount of $358,710.00. ECF No. 1 ¶¶ 15-16; ECF No. 45-1. The deed of trust was recorded in the Washoe County Recorder's Office on February 6, 2008. *Id.* The loan was federally insured by the Federal Housing Administration. ECF No. 1 ¶ 17. Wells Fargo alleges it was subsequently assigned the note and became the beneficiary of the deed of trust. ECF No. 1 ¶ 18.

After the McKays failed to pay HOA assessments that came due, Fuller Jenkins Clarkson, P.C. ("Fuller"), on behalf of Foothills, recorded a Notice of Delinquent Assessment Lien against the property on November 16, 2011. ECF No. 1 ¶ 20; ECF No. 45-2. On December 29, 2011, Fuller filed a Notice of Default and Election to Sell under Notice of Delinquent Assessment (Lien) on behalf of the HOA. ECF No. 1 ¶ 22, ECF No. 45-3. On April 18, 2012,

borrower Lawrence McKay filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court, District of Idaho.[1] ECF Nos. 44, 45-4. He was granted discharge under Title 11, United States Bankruptcy Code, section 727 on February 25, 2014. ECF No. 45-8.[2]

A Notice of Trustee/ Foreclosure Sale was recorded on October 11, 2012. ECF No. 1 ¶ 25, ECF No. 45-5. A nonjudicial foreclosure sale occurred on November 13, 2012, during which the HOA purchased the property for $3,636.03; a Trustee's Deed upon Sale was then recorded on January 8, 2013. ECF No. 1 ¶ 27; ECF No. 45-6.[3] The HOA then transferred the property to SFR by Quitclaim Deed, "FOR VALUABLE CONSIDERATION of $1.00 and a peppercorn," recorded May 9, 2013, in the Washoe County Recorder's Office. ECF No. 1 ¶ 31; ECF No. 45-7; 48-1(B-1). SFR alleges it paid $4,960.95 in consideration for the property. ECF Nos. 48-1(B-1).

Approximately four years later, Wells Fargo brought suit against SFR, Foothills, and Fuller alleging seven causes of action: (1) quiet title and declaratory relief under the Takings Clause of the 5th and 14th Amendments to the U.S. Constitution; (2) quiet title and declaratory relief under the Supremacy Clause, Article 4, § 3 of the U.S. Constitution; (3) quiet title and declaratory relief under the Due Process Clause of the 5th and 14th Amendments to the U.S. Constitution; (4) wrongful foreclosure; (5) violation of NRS § 116.1113 *et seq.*; (6) quiet title;

---

[1] Wells Fargo indicates that McKay's Chapter 11 Bankruptcy was converted to Chapter 7 on January 4, 2013. ECF No. 44 n.1. Wells Fargo provides no evidence in support of this assertion.

[2] The list of creditors attached to both the petition and the discharge does include Wells Fargo but does not appear to include Foothills or any other HOA.

[3] Wells Fargo requests the court take judicial notice of the following publicly recorded documents: (1) Deed of Trust; (2) Notice of Delinquent Assessment Lien; (3) Notice of Default and Election to Sell; (4) Notice of Trustee/Foreclosure Sale; (5) Trustee's Deed of Sale; and (6) Quitclaim Deed. Wells Fargo further requests that the court take judicial notice of Lawrence McKay's Chapter 11 Voluntary Bankruptcy Petition and subsequent Discharge. *See* ECF No. 45. SFR does not object to the court taking judicial notice that the documents were publicly recorded, but objects to the court taking judicial notice of the documents to the extent Wells Fargo "intends to use them to establish the truth or falsity of the facts contained therein," because SFR disputes Wells Fargo is the beneficiary of the Deed of Trust. *See* ECF No. 69. The court takes judicial notice of these publicly recorded documents. These are matters of public record recorded in the Washoe County Recorder's Office, and are appropriate for judicial notice under Federal Rules of Evidence 201(b)(2). Accordingly, it is proper for the court to consider these documents when reviewing the pending motions for summary judgment. *See Harlow v. MTC Fin. Inc.*, 865 F. Supp. 2d 1095, 1098 (D. Nev. 2012) ("When ruling on a motion for summary judgment, the Court may take judicial notice of matters of public record, including public documents.").

and (7) unjust enrichment. ECF No. 1 SFR filed counterclaims for: (1) quiet title and declaratory relief pursuant to NRS § 30.010 *et. seq.*, NRS § 40.010, and NRS § 116.3116; and (2) preliminary and permanent injunction prohibiting Wells Fargo from any sale or transfer that would affect the title to the property. ECF No. 16.

The court dismissed defendant Fuller pursuant to Federal Civil Procedure Rule 4(m) on November 3, 2017. ECF No. 35. Upon motion by Foothills, the court dismissed Wells Fargo's fourth claim, wrongful-foreclosure, fifth claim, violations of NRS § 116.113, and seventh claim, unjust-enrichment, for failure to adhere to the requirements of NRS § 38.310. ECF No. 37.[4] On March 13, 2018, the court granted the parties stipulated dismissal of MERS. ECF No. 41. On May 2, 2018, the Clerk of Court entered default judgment against cross-defendants Brian McKay and Lawrence D. McKay for failure to answer, move, or otherwise plead before this court after the date of effective summons. ECF Nos. 49, 50. The court's order as to the pending dispositive motions regarding the remaining parties and causes of action now follows.

## II. LEGAL STANDARD

**Motion for Summary Judgment Pursuant to Civil Procedure Rule 56.**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of

---

[4] Wells Fargo numbered both its quiet-title claim and its unjust-enrichment claim as "Sixth Cause of Action." ECF No. 1. The court's prior Order, ECF No. 37, refers to the unjust-enrichment claim as the seventh claim for relief. This Order does the same.

proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### III. DISCUSSION

#### a. Statute of Limitations

   1) <u>The Statute of Limitations for a Quiet Title Action is Five Years.</u>

In Nevada, an action to quiet title arising from an HOA foreclosure sale is subject to a five-year statute of limitations period pursuant to NRS § 11.070. *U.S. Bank Nat'l Ass'n v. Southern Highlands Cmty. Ass'n*, No. 2:18-cv-00205-GMN-GWF, 2018 WL 3997265, at *2 (D. Nev. Aug. 21, 2018); *Deutsche Bank Nat'l Trust Co. v. SFR Invest. Pool 1*, Case No. 2:17-cv-02638-GMN-GWF, 2018 WL 3758569, at *2 (D. Nev. Aug. 8, 2018); *Bank of Am., N.A. v. Desert Canyon Homeowners Ass'n*, Case No. 2:17-cv-00663-MMD-NJK, 2017 WL 4932912, at *2 (D. Nev. Oct. 31, 2017); *Bank of Am., N.A. v. Nev. Trails II Cmty. Ass'n*, Case No. 2:16-cv-00880-JCM-PAL, 2017 WL 2960521, at *4 (D. Nev. July 11, 2017) ("*Nev. Trails II*"); *Nationstar Mortg., LLC v. Falls at Hidden Canyon Homeowners Ass'n*, Case No. 2:15-cv-01287-RCJ-NJK, 2017 WL 2587926, at *3 (D. Nev. June 14, 2017); *Bank of Am., N.A. v.*

*Antelope Homeowners' Ass'n*, Case No. 2:16-cv-00449-JCM-PAL, 2017 WL 421652, at *3 (D. Nev. Jan. 30, 2017).[5]

Here, Wells Fargo's quiet title claim arises from an HOA foreclosure sale; therefore, a five-year statute of limitations period applies. "Where a claim arises from the non-judicial foreclosure on real property, the statute of limitations begins to accrue at the time of the foreclosure sale." *US Bank N.A. v. BDJ Invs., LLC*, Case No. 2:16-cv-00866-GMN-PAL, 2018 WL 4705525, at *2 (D. Nev. Sept. 29, 2018). The foreclosure sale took place on November 13, 2012. Because the plaintiff filed its Complaint on May 26, 2017, it's quiet title claim is timely and is not barred by the statute of limitations.

2) <u>The Statute of Limitation is Three Years for Claims for Violations of NRS § 116.1113 *et seq*. and Wrongful Foreclosure.</u>

NRS § 11.190(3) imposes a three-year statute of limitations on claims arising from liabilities created by statute. NRS § 11.190(3)(a). The court further determines that the claims herein accrued at the time of the foreclosure sale—a decision supported by other district court decisions. *See Bank of Am., N.A. v. Desert Canyon Homeowners Ass'n*, Case No. 2:17-cv-00663-MMD-NJK, 2017 WL 4932912, at *2 (D. Nev. Oct. 31, 2017) (holding the statute of limitations began to run on the date of the foreclosure sale for claims alleging a breach of NRS § 116.1113 and wrongful foreclosure); *Nationstar Mortg. LLC v. Curti Ranch Two Maintenance Ass'n, Inc.*, Case No. 3-17-cv-00699-LRH-CBC, 2018 WL 1611190, at *3 (D. Nev. April 2, 2018) (holding the same).

Both the claim for violations of NRS § 116.1113 *et seq.*, plaintiff's fifth cause of action, and the claim for wrongful foreclosure, plaintiff's fourth cause of action, arise from allegations that the HOA violated statutory duties imposed by Chapter 116. *See* ECF No. 1. The HOA foreclosed on the property according to the alleged authority in NRS Chapter 116. *See* ECF Nos. 45-2; 45-3. However, these claims were filed more than three years from the date of the

---

[5] The court declines to follow *Ocwen Loan Servicing, LLC, v. SFR Investments Pool 1, LLC*, Case No. 2:17-cv-01757-JAD-VCF, 2018 WL 2292807, at *2-5 (D. Nev. May 18, 2018); and *Bank of America, N.A., v. Country Garden Owners Ass'n*, Case No. 2:17-cv-01850-APG-CWH, at *1-2 (D. Nev. March 14, 2018).

foreclosure sale, November 13, 2012. Therefore, to the extent these claims remain against SFR, the court finds both are barred by the statute of limitation and thus, fail as a matter of law.

### 3) The Statute of Limitations for an Unjust-Enrichment Claim is Four Years.

Under Nevada law, Wells Fargo's claim for unjust enrichment is governed by a four-year statute of limitation. *See U.S. Bank, N.A. v. 9008 Medicine Wheel Trust*, Case No. 2:18-cv-00092-GMN-NJK, 2018 WL 4494090, at *3 (D. Nev. Sept. 18, 2018) ("*Wheel Trust*"); *Bank of N.Y. Mellon v. GR Invs., LLC*, Case No. 2:16-cv-1959-JCM-CWH, 2018 WL 2418542, at *4 (D. Nev. May 25, 2018) ("A four-year statute of limitations period applies to BNYM's unjust enrichment claim."); *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, Case No. 2:17-cv-1319-JCM-GWF, 2017 WL 2990852, at *3 (D. Nev. July 13, 2017); *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (citing NRS 11.190(2)(c)).

Wells Fargo alleges that the HOA and SFR were unjustly enriched because Wells Fargo "expended funds and resources to maintain and preserve the Property, including but not limited to, payments of real property taxes and utilities, to the detriment of Wells Fargo." ECF No. 1 ¶ 109. However, Wells Fargo has provided the court with no specific evidence showing when these payments were made or when SFR retained the benefit of these payments. Because Wells Fargo presented no evidence, the only date the court has to start the statute of limitations is the date of the foreclosure sale, November 13, 2012. *See Wheel Trust*, 2018 WL 4494090, at *3. Therefore, as Wells Fargo filed its complaint more than four years from the date of the foreclosure sale, its claim for unjust enrichment is barred by the statute of limitations and thus, fails as a matter of law.[6]

**b. Wells Fargo lacks standing to argue that the violation of the bankruptcy automatic stay makes the foreclosure sale void *ab initio*.**

Wells Fargo argues that Foothills' nonjudicial foreclosure sale was void *ab initio* because it took place during the pendency of Lawrence McKay's bankruptcy proceedings in violation of 11 U.S.C. § 362. In response, SFR filed a motion to strike all references that the sale violated the

---

[6] As this claim fails as a matter of law based on the statute of limitations, the court declines to reach the merits of the parties' Voluntary Payment Doctrine arguments.

7

automatic stay, arguing that Wells Fargo (1) failed to raise this as an affirmative defense in prior pleadings as required by Federal Civil Procedure Rule 8; (2) Wells Fargo lacks standing to raise the issue; and (3) the issue is time-barred. *See* ECF No. 61. Other arguments and SFR's procedural irregularity in filing the motion to strike aside, the court agrees with SFR that Wells Fargo lacks standing to assert that the automatic stay was violated. *See Nationstar Mortg., LLC v. SFR Inv. Pool 1, LLC*, Case No. 2:16-cv-00703-MMD-GWF, 2019 WL 236713, at *4 (D. Nev. Jan. 15, 2019) ("SFR correctly argues that Nationstar lacks standing to give legal effect to violations of the automatic stay."); *U.S. Bank Nat'l Ass'n as Tr. For Certificate Holders of Harborview Mortg. Loan Tr. 2005-08 v. Heritage Estates Homeowners Ass'n*, Case No. 2:16-cv-01385-GMN-CWH, 2018 WL 4623151, at *4 (D. Nev. Sept. 26, 2018) ("*Heritage Estates*") ("The automatic stay provisions of the bankruptcy code are designed to protect debtors only, and do not afford non-parties to the bankruptcy case any rights." (internal quotations and citations omitted)).

"Notwithstanding the fact that a violation of the automatic stay is indeed void, as opposed to merely voidable, a party must have standing to bring an alleged violation of the stay to the bankruptcy court's attention." *In re Franck*, Case No. 92-36665, 19 F.3d 1440, 1994 WL 93169, at *2 (9th Cir. March 23, 1994) (unpublished) (internal citation omitted)). The Ninth Circuit limited standing under § 362 "to those Congress has designated as beneficiaries of the stay." *In re Brooks*, 871 F.2d 89, 90 (9th Cir. 1989) (citing *In re Global Invst. & Loan Co.*, 869 F.2d 556 (9th Cir. 1989) ("*In re Global*")). In *In re Global*, the Court found that a creditor seeking to clear title to debtor's property for their own separate interests, as opposed to enforcing a claim against the debtor's assets, is outside the protections of § 362 and lacks standing. *In re Global*, 869 F.2d at 559-60. Further, "[b]ecause the plain language of § 362(a) does not implicate the interests of creditors or any other party, only debtors and trustees are permitted to challenge violations of the automatic stay." *In re Franck*, 1994 WL 93169, at *3.

Default judgment was awarded against Lawrence McKay, and he is no longer a party to this action. It is undisputed that Wells Fargo was not a party to McKay's bankruptcy case, either

as a debtor or trustee. Therefore, regardless of whether the foreclosure sale was void, Wells Fargo lacks standing to assert that the foreclosure sale violated the automatic stay.

### c. The Nevada Supreme Court held the notice provision of NRS § 116 is Constitutional.

Wells Fargo argues that the HOA's foreclosure sale could not have extinguished the first deed of trust because the Ninth Circuit ruled in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.* that the statute's "opt-in" notice provision was facially unconstitutional. *See* 832 F.3d 1154, 1158-59 (9th Cir. 2016). Wells Fargo is correct that the Ninth Circuit held that NRS § 116.3116's "opt-in" notice scheme was unconstitutional because it violated lender's due process rights. *Id.* at 1156. In coming to this holding, the Court determined that NRS § 107.090 should not be read into NRS § 116.31168(1) to cure the due process deficiency. *Id.* at 1159.

However, "a State's highest court is the final juridical arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Cal. Teachers Ass'n v. State Bd. Of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001) ("it is solely within the province of the state courts to authoritatively construe state legislation."). Further, the Ninth Circuit has held that it is "required to follow intervening decisions of the [State] Supreme Court that interpret state law in a way that contradicts [its] earlier interpretation of that law." *Bonilla v. Adams*, 423 Fed. Appx. 738, 740 (9th Cir. 2011); *see also Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) ("our interpretation . . . was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect."). A prior decision that has been "undercut by higher authority to such an extent that it has been effectively overruled by such higher authority," is no longer binding on the court. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003).

The Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon* so undercut *Bourne Valley* that the two are irreconcilable. 422 P.3d 1248, 1253 (Nev. 2018) ("*Bank of N.Y. Mellon*"); *see Christiana Trust v. SFR Invs. Pool 1, LLC*, Case No. 2:16-cv-00684-GMN-CWH, 2018 WL 6603643, at *3 (D. Nev. Dec. 17, 2018); *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, Case No. 2:15-cv-00692-GMN-CWH, 2018 WL 4704031, at *3-4 (D. Nev.

9

Sept. 29, 2018); *Deutsche Bank Nat'l Trust Co. v. Isla at S. Shores Homeowners Ass'n*, Case No. 2:16-cv-02275-GMN-GWF, 2018 WL 4682323, at *4-5 (D. Nev. Sept. 28, 2018); *Heritage Estates*, 2018 WL 4623151, at *5-6. In its decision, the Nevada Supreme Court specifically declined to follow the Ninth Circuit, instead holding that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090," and that prior to the October 1, 2015 amendment, an HOA was required to "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Bank of N.Y. Mellon*, 422 P.3d at 1253. This holding so undercuts *Bourne Valley* that it is no longer controlling authority with respect to section 116.3116's notice provisions in this district. Therefore, the court rejects Wells Fargo's theory that *Bourne Valley* prevents the HOA's foreclosure sale from extinguishing Wells Fargo's deed of trust.[7]

**d. The content of the HOA notices, as required by statute, was adequate to apprise Wells Fargo that its interest in the deed of trust could be affected, and therefore, did not deprive Wells Fargo of due process.**

Wells Fargo argues that the sale violated its due process rights because the statute did not require that the notices indicate that the HOA was foreclosing on a superpriority lien or that the foreclosure put the deed of trust at risk: Wells Fargo argues that all of the notices were directed to the homeowners, and stated only that if the foreclosure proceeded, they would lose the home, not that the Bank would lose its priority. Wells Fargo's arguments are unavailing.

To satisfy due process, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[D]ue process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right." *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995). Further, "[t]he law in Nevada does not require that an HOA Trustee guide a junior lienholder through the foreclosure

---

[7] The court declines to discuss the party's arguments for returning to the 1991 statute under the Return Doctrine or saving the statute pursuant to severability as those arguments are moot given the Nevada Supreme Court's ruling.

process or explain to a junior lienholder how it could prevent [the loss of its] security interest." *Collegium Fund LLC, Series 18 v. Martinez et. al.*, Case No. A-15-720933-C, 2017 Nev. Dist. LEXIS 625, at *14 (8th Judicial Dist. Ct. Jan. 19, 2017).

Wells Fargo also argues that because the HOA's lien is comprised of a superpriority and a subpriority amount, failure to specify the superpriority amount renders the notice improper. However, "[t]he fact that a notice does not identify a super-priority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Nationstar Mortg. LLC. V. Amber Hills II Homeowners Ass'n*, Case No. 2:15-cv-014330APG-CWH, 2016 WL 1298108, at *7 (D. Nev. Mar. 31, 2016) ("*Amber Hills*"). Additionally, because notices go "to the homeowner and other junior lienholders, not just [to the holder of the first deed of trust], . . . it [is] appropriate to state the total amount of the lien." *SFR Invs. Pool 1, LLC v. U.S. Bank N.A.*, 334 P.3d 408, 418 (Nev. 2014) (*en banc*).

The court finds that the content of the notices did not offend due process. The notices specifically articulate that the liens are being made pursuant to NRS Chapter 116, giving lienholders notice that the HOA superpriority statute is at issue. ECF Nos. 45-2, 45-4. Both notices provide for an opportunity to extinguish the lien and articulate how an interested party could go about doing so. *Id.* Though the notice does not include the specific superpriority amount due, the court declines to deviate from the prior precedent, and finds that the notice was not required to include that specific amount. Therefore, the court finds the content of the notice did not offend due process.

e. **NRS § 116.3116 *et. seq.* does not create an impermissible regulatory taking under the 5th and 14th Amendments to the U.S. Constitution.**

Under the Takings Clause of the U.S. Constitution, the state may not take private property for public use without paying just compensation. U.S. CONST. amend. V; *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 238-41 (1897) (holding the Takings Clause applied to the States through the 14th Amendment Due Process Clause). Wells Fargo argues that the NRS which creates a superpriority lien for the HOA creates a regulatory taking.

However, the Nevada Supreme Court recently addressed this issue and held that NRS § 116.3116 *et. seq.* did not effectuate an unconstitutional regulatory taking. *See Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg.*, 388 P.3d 970, 974-75 (Nev. 2017) ("*Saticoy Bay*"). This court has also addressed the issue and held the same. *See Deutsche Bank Nat'l Trust Co. v. TBR I, LLC*, Case No. 3:15-cv-00401-LRH-WGC, 2016 WL 3965195, at *3 (D. Nev. July 22, 2016). Seeing no reason to deviate from this precedent, the court finds the statute does not effectuate a regulatory taking.

"The United States Constitution protects individual rights only from *government* action, not from *private* action." *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003) (emphasis in original). Here, the nonjudicial foreclosure sale was conducted by a private entity, Foothills, an HOA, in accordance with Nevada law. Therefore, there was no government action. *See Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003) ("The mere fact that a business is subject to a state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." (internal quotations and citation omitted)); *Wells Fargo Fin. Nev. 2 v. SFR Invs. Pool 1, LLC*, Case No. 2:17-cv-125-JCM-CWH, 2018 WL 6249708, at *5 (D. Nev. Nov. 29, 2018) (finding that "because this case involves a private lien-holder conducting a nonjudicial foreclosure, there is no government action."); *Saticoy Bay*, 388 P.3d at 975 ("Wells Fargo does not cite, and we have not found, a single case that has held a state may not statutorily alter the priority of liens unless it compensates subsequent lienholders whose interests are diminished or destroyed as a result."); *Russell v. OneWest Bank FSB*, Case No. 1:11-CV-00222-BLW, 2011 WL 5025236, at *11 (D. Idaho Oct. 20, 2011) ("A foreclosure sale involves state action only when there is overt official involvement in the enforcement of creditors' remedies." (internal quotations omitted)); *S. Comfort Campgrounds v. Fed. Home Loan Bank Bd.*, CIV. A. No. 89-4417, 1995 WL 63090, at *2 (E.D. La. Feb 14, 1995) (a foreclosure sale was not a taking under the Fifth Amendment because "a taking only results from the government's exercise of its sovereign power to appropriate private property for public use."). Here, because there is no state action, the statute does not effectuate an unconstitutional

regulatory taking. Therefore, Wells Fargo's motion for summary judgment fails as to its first cause of action.

   **f. NRS § 116.3116 *et. seq.* does not violate the Property Clause of the U.S. Constitution.**

Wells Fargo argues that because the property was federally insured through the Federal Housing Administration ("FHA") insurance program, Housing and Urban Development ("HUD") has an interest in the property, which is protected by the Property Clause. Wells Fargo argues this interest prevents Foothills from foreclosing on the property and extinguishing the first deed of trust. ECF No. 1 ¶17.

Under the Property Clause, only "Congress has the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. CONST. art. IV, § 3, cl. 2. In simple terms this means title to property owned by the United States can only be divested by an Act of Congress. *Beaver v. United States*, 350 F.2d 4, 8 (9th Cir. 1965). "If a state were able to pass laws that could dispose of federal lands . . . 'the practical result . . . would be, by force of state legislation to take from the United States their own land, against their own will, and against their own laws.'" *Yunis v. United States*, 118 F.Supp.2d 1024, 1032 (C.D. Cal. 2000) (quoting *Wilcox v. Jackson*, 38 U.S. 498, 517 (1839)).

The court finds that the Property Clause is not violated. First, Wells Fargo lacks prudential standing to raise the challenge. *See Freedom Mortgage Corp. v. Las Vegas Dev. Grp.*, LLC, 106 F.Supp.3d 1174, 1179-80 (D. Nev. 2015) ("*Freedom Mortgage*"). In coming to this conclusion, the court must determine "whether the constitutional . . . provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Importantly, the court "must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." *Singleton v. Wulff*, 428 U.S. 106, 113 (1976).

Here, Wells Fargo is attempting to resolve the controversy by asserting that the federal government's rights under the Property Clause were violated. The federal government is not a party to this case; rather, Wells Fargo is attempting to bring these claims on behalf of HUD.

However, Wells Fargo is really bringing this action to assert its own right to the property, not to assert the rights of HUD. Further, HUD is the best party to raise the challenge and advocate for its interests. *See id.* at 114 ("third parties themselves usually will be the best proponents of their own rights."). Therefore, Wells Fargo lacks prudential standing to challenge Foothills' foreclosure sale.

Second, even if the court were to find Wells Fargo had prudential standing, the foreclosure sale did not dispose of property belonging to the United States. "The key to a successful Property Clause challenge is that the federal government either held a deed of trust against, or owned, the property." *Freedom Mortgage*, 106 F.Supp.3d at 1181. Here, nothing in the record indicates that HUD held the deed of trust or owned the property, either at the time of the foreclosure or currently. HUD is simply the former insurer of the McKays' loan. The court finds that interest is too attenuated to reasonably conclude that Foothills' foreclosure on the property disposed of property belonging to the United States. Accordingly, the court finds that the Property Clause is not violated.

### g. NRS § 116.3116 *et. seq.* is not preempted by the Supremacy Clause of the U.S. Constitution.

"State legislation must yield under the Supremacy Clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979). "In this manner, the supremacy clause seeks to avoid the introduction of the disparity, confusion, and conflict which would follow if the Government's general authority is subject to local controls." *Id.* (citing *United States v. Allegheny County*, 322 U.S. 174, 183 (1944)).

Wells Fargo, in its Second Cause of Action, seeks this court to declare its first deed of trust was not extinguished by Foothills foreclosure sale, arguing that the foreclosure is barred by the Supremacy Clause. ECF No. 1 ¶¶ 61-72. However, the Nevada Supreme Court, as well as this District Court, have addressed this issue and held that there is no conflict between the NRS and provisions of the FHA insurance policy such that the Supremacy Clause would preempt the

14

NRS. *See Renfroe v. Lakeview Loan Servicing, LLC*, 398 P.3d 904, 906-909 (Nev. 2017); *Freedom Mortgage*, 106 F.Supp.3d at 1183-88; *Las Vegas Dev. Grp., LLC v. Yfantis*, 173 F.Supp.3d 1046, 1053 (D. Nev. 2016). The court agrees with this precedent.

"[T]he FHA insurance program specifically contemplates that lenders may be subject to superpriority liens such as those provided in NRS 116.3116." *Renfroe*, 398 P.3d at 905. And "[n]othing prevents a lender from simultaneously complying with HUD's program and Nevada's HOA-foreclosure laws." *Freedom Mortgage*, 106 F.Supp.3d at 1184. The Nevada Supreme Court specifically articulated that "NRS 116.3116 poses no risk of any direct loss to HUD because any contract of insurance with HUD terminates upon the lender's inability to convey marketable title." *Renfroe*, 398 P.3d at 908. Finally, as the *Freedom Mortgage* Court discussed, nothing within NRS 116.3116 impairs the policy goals of the FHA. *Freedom Mortgage*, 106 F.Supp.3d at 1187-88. Rather "Nevada's HOA laws—and NRS 116.3116(2) in particular—are entirely consistent with these goals of improving residential community development, eliminating blight, and preserving property values." *Id.* at 1188.

Therefore, for the above reasons, the court finds that the Supremacy Clause does not preempt the NRS. Accordingly, Wells Fargo's motion for summary judgment fails as to its second cause of action.

**h. The court grants SFR's motion for summary judgment to quiet title to the property, finding that there is no equitable ground for setting aside the foreclosure sale.**

A quiet title action "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." NRS § 40.010. "In a quiet title action, each party must plead and prove his or her own claim to the property in question," and a "plaintiff's right to relief therefore depends on superiority of title." *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992) (internal citations omitted). The record indicates that SFR is the current record title holder to the property. *See* ECF Nos. 45-7; 48-1(B-2). Because the presumption favors SFR, Wells Fargo has the burden of showing "that the sale should be set aside in light of [SFR's] status as the record title holder." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 450 P.3d

641, 646 (Nev. 2017) ("*Shadow Canyon*") (citing *Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (1996)).

Wells Fargo argues that this court should set aside the foreclosure on equitable grounds and seeks a declaration that the sale was void because it was commercially unreasonable. However, the Nevada Supreme Court has held that the commercial reasonableness standard is inapplicable in the HOA foreclosure sale context. *See Shadow Canyon*, 450 P.3d at 644-46. Rather, to set aside a foreclosure sale, Wells Fargo cannot simply demonstrate "that an association sold a property at its foreclosure sale for an inadequate price . . .; there must also be a showing of fraud, unfairness, or oppression." *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1112 (Nev. 2016) ("*Shadow Wood*") (citing *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982)).

First, the court looks at the sale price. In *Shadow Canyon*, the Nevada Supreme Court rejected the argument that a sale price less than 20 percent fair market value would generally invalidate the sale and found that such a hard and fast rule would be inconsistent with its ruling in *Golden v. Tomiyasu*. *Shadow Canyon*, 405 P.3d at 647; *see Golden v. Tomiyasu*, 387 P.2d 989, 995 (1963) (absent actual evidence of fraud, unfairness, or oppression, there is no reason to invalidate a legally made sale). Rather, the court determined that the "price/fair-market-value disparity is a relevant consideration because a wide disparity may require less evidence of fraud, unfairness, or oppression to justify setting aside the sale." *Shadow Canyon*, 405 P.3d at 648.

Here, Foothills purchased the property at the foreclosure sale for $3,636.03. *See* ECF No.45-6. Wells Fargo had an appraisal of the property completed by William G. Kimmel, who determined that as of November 13, 2012, the property had a market value of $210,000.00. *See* ECF No. 44-3. Wells Fargo argues that because this sale price was less than 2.4 percent of the property's market value, it is grossly inadequate, and should be set aside as a matter of law. While the court agrees that the sale price is quite low and will considered the low price in determining whether there was fraud, unfairness, or oppression, the court declines to find it was inadequate as a matter of law. *See Nev. Trails II*, 2017 WL 2960521, at *9-10 (upholding a

foreclosure sale that was 3 percent of the property's fair market value after no fraud, unfairness, or oppression were found).

However, even if the price was inadequate, the court cannot set aside the sale absent a showing of fraud, unfairness, or oppression. *See Shadow Canyon*, 405 P.3d at 648-49 ("it necessarily follows that if the district court closely scrutinizes the circumstances of the sale and finds no evidence that the sale was affected by fraud, unfairness, or oppression, then the sale cannot be set aside, regardless of the inadequacy of price."). Wells Fargo argues that "it was patently unfair for the HOA and its agents to circumvent the bankruptcy court and race to the front of the line," while Wells Fargo "worked within the court's rules." ECF No. 44 at 7. Wells Fargo also argues it was unfair because it never received notice of the foreclosure sale.[8]

The court disagrees. First, as discussed above, Wells Fargo does not have standing to assert that the bankruptcy stay was violated. It follows that it cannot use this argument as a shield now. Wells Fargo could have reached out to the Foothills, paid the superpriority lien and protected its security interest, or filed for a temporary restraining order or to enjoin Foothills' foreclosure sale. Wells Fargo did nothing.

Second, though Wells Fargo argues it never received notice, the record indicates otherwise. Foothills followed the appropriate notice requirements provided by statute—it recorded notice of the foreclosure in the Washoe County Recorder's Office, it mailed, by certified copy, the notices directly to Wells Fargo, it posted the notices in public places, and published the notice in the Sparks Tribune. Even if the court disregards the certified mail received receipts, under Nevada law, it is presumed that letters mailed are received. NRS § 47.250(13). Further, the Nevada Supreme Court has reasoning that the pertinent statutes require mailing, not receipt. *PNC Bank, N.A. v. Saticoy Bay LLC Series 9320 Mt. Cash Ave. UT 103*, 395 P.3d 511, 2017 WL 2334492, at *1 (Nev. May 25, 2017) (unpublished). Wells Fargo

---

[8] Pursuant to the statute, Foothills mailed, by certified mail, the Notice of Default, (ECF No. 48-1(A-8), and Notice of Sale, (ECF No. 48-1(A-10), to Wells Fargo. SFR produced evidence of the certified mail receipts in support of its motion for summary judgment. *Id.* Wells Fargo argues that it did not receive these notices. Wells Fargo further argues in its reply briefing that defendants failed to disclose this evidence, specifically the signed certified mail receipts, and thus, it should be excluded under Federal Rule of Civil Procedure 37. ECF No. 74. Wells Fargo does not appear to dispute the certified mailings themselves.

17

has not shown any failure or irregularity in the notices such that it should be regarded as fraud, unfairness, or oppression.

Therefore, the court finds that when Foothills foreclosed on the property, Wells Fargo's deed of trust was extinguished. Subsequently, when SFR purchased the property from Foothills, it too took the property free from Wells Fargo's deed of trust. Accordingly, the court grants SFR's motion and quiet titles the property to SFR.

### i. The lis pendens is expunged.

On June 15, 2017, Wells Fargo recorded a Notice of Lis Pendens in the Washoe County Recorder's Office. ECF No. 48-1(A-14). After initiating this pending suit, Wells Fargo also provided notice of the lis pendens on the court docket. *See* ECF No. 3. Pursuant to NRS § 14.015, the party that records the lis pendens "must establish to the satisfaction of the court either: (a) That the party who recorded notice is likely to prevail in the action; or (b) That the party who recorded the notice has a fair chance of success on the merits in the action." NRS § 14.015(3). Because the court is granting summary judgment for SFR, Wells Fargo can no longer maintain that it likely will prevail or has a fair chance of success on the merits. *See Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, Case No. 3:15-cv-00240-MMD-CBC, 2019 WL 470901, at *6 (D. Nev. Feb. 6, 2019). Therefore, the court orders that Wells Fargo's notice of lis pendens on the property be expunged.

///
///
///
///
///
///
///
///
///

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Wells Fargo's motion for summary judgment (ECF No. 44) is **DENIED**.

IT IS FURTHER ORDERED that SFR's cross motion for summary judgment (ECF No. 48) joined by Foothills (ECF No. 52) is **GRANTED**.

IT IS FURTHER ORDERED that SFR's motion to strike (ECF No. 61), joined by Foothills (ECF No. 67), is **DENIED** as moot.

IT IS FURTHER ORDERED that Wells Fargo's Notice of Lis Pendens (ECF No. 3) is hereby expunged.

The Clerk is directed to enter judgment in accordance with this order and close this case.

IT IS SO ORDERED.

DATED this 25th day of February, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE